**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

DIANE L. FATER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
    _____/

CASE NO:  06-11790

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE CHARLES E. BINDER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that plaintiff is not disabled.  Accordingly, **IT IS RECOMMENDED** that PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE DENIED, DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, and that the FINDINGS OF THE COMMISSIONER BE AFFIRMED.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case has been referred to this Magistrate Judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability insurance benefits.  This matter is currently before the Court on cross motions for summary judgment.  (Dkt. 13, 15.)

Plaintiff was 53 years of age at the time of the most recent administrative hearing and has completed an eleventh grade education.  (Tr. at 11, 48.)  Plaintiff's relevant work history included work as an automobile assembler.  (Tr. at 62.)

Plaintiff filed the instant claim on August 25, 2003, alleging that she became unable to work in September, 2003. (Tr. at 36, 186.) The claim was denied initially. (Tr. at 25.) In denying Plaintiff's claim, the Defendant Commissioner considered disorders of the muscles and ligaments as possible bases of disability. (*Id.*)

On July 6, 2005, Plaintiff appeared with counsel before Administrative Law Judge Alfred H. Varga (ALJ), who considered the case *de novo*. In a decision dated October 17, 2005, the ALJ found that Plaintiff was not disabled. (Tr. at 3-15.) Plaintiff requested a review of this decision on December 14, 2005. (Tr. at 6.)

The ALJ's decision became the final decision of the Commissioner on February 10, 2006, when the Appeals Council denied Plaintiff's request for review. (Tr. at 3-5.) On April 11, 2006, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.    Standard of Review**

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (per curiam). The Commissioner is charged with finding the facts relevant to an application for disability benefits. A federal court "may not try the case de novo, . . . ." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984).

If supported by substantial evidence, the Commissioner's decision is conclusive, regardless of whether the court would resolve disputed issues of fact differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir.1990), and even if substantial evidence would also have supported a finding other than that made by the ALJ. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc). The scope of the court's review is limited to an

2

examination of the record only. *Brainard,* 889 F.2d at 681. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 681 (citing *Consolidated Edison Co. v. NLFB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 2d 126 (1938)). The substantial evidence standard "'presupposes that there is a zone of choice within which the decision makers can go either way, without interference from the courts.'" *Mullen*, 800 F.2d at 545 (quoting *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)) (affirming the ALJ's decision to deny benefits because, despite ambiguity in the record, substantial evidence supported the ALJ's conclusion).

The administrative law judge, upon whom the Commissioner and the reviewing court rely for fact finding, need not respond in his or her decision to every item raised, but need only write to support his or her decision. *Newton v. Sec'y of Health & Human Servs.*, No. 91-6474, 1992 WL 162557 (6th Cir. July 13, 1992). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). Significantly, under this standard, a reviewing court is not to resolve conflicts in the evidence and may not decide questions of credibility. *Garner,* 745 F.2d at 387-88.

**C.    Governing Law**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the determination for

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen*, 800 F.2d at 537.

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). "[B]enefits are available only to those individuals who can establish 'disability' within the terms of the Social Security Act." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). One is thus under a disability "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, benefits are denied without further analysis.

Step Three:  If the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled without further analysis.

Step Four:  If the claimant is able to perform his or her previous work, benefits are denied without further analysis.

Step Five:  If the claimant is able to perform other work in the national economy, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Garcia v. Sec'y of Health & Human Servs.*, 46 F.3d 552, 554 n.2 (6th Cir. 1995); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 687-88 (6th Cir. 1985).  "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Preslar*, 14 F.3d at 1110.  "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Id.* "Step five requires the [Commissioner] to show that the claimant is able to do other work available in the national economy. . . ." *Id.*

**D.    Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that in a "Disability Report Adult" form completed at the time she applied for benefits, Plaintiff indicated that the injury or illness limiting her ability to work was a "right shoulder - torn rotator cuff." (Tr. at 42.)  Plaintiff also noted that her prior work required that she lift 20 pounds and that she frequently lifted 10 or 25 pounds.[1]  (Tr. at 43.)  Plaintiff stated that she prepares her own meals, does her own shopping and can go out alone although she is not able to do as many household chores as she would like to do.  (Tr. 56-57.)  Plaintiff recounted that she previously enjoyed riding horses and training dogs, but that she was rarely able to

---

[1] Plaintiff checked both boxes, darkening the 10 pound box a bit more than the 25.

5

undertake these activities, as a she found it hard to saddle horse or control these animals. (Tr. at 58.)

Notations made by Milford family practice in mid-July 2000 indicate that Plaintiff was at that time suffering from bursitis and a contusion on the right elbow. The examining physician felt that Plaintiff could return to work approximately 1 week later. (Tr. at 143.) Notations made in mid-November 2002, indicate that Plaintiff had suffered an injury to her right shoulder and that she should undertake work involving only one hand for the next two months. (Tr. at 125.)

X-rays of Plaintiff's shoulder taken in early October 2002, at the request of Dr. Martin, revealed mild bones spurring along the shoulder joint but no fracture or dislocation of the shoulder was seen. (Tr. at 91.)

On November 12, 2002, a physical therapist reported to Plaintiff's treating physician, Dr. Martin, that the Plaintiff had undergone eight sessions of physical therapy for a strained right shoulder and a rotator cuff tear. (Tr. at 92.) The therapist stated that Plaintiff had reported a decrease in pain and an increase in range of motion and that Plaintiff's "arm is moving better and becoming more useful with functional activities" (*Id.*) The therapist reported that Plaintiff was responding well to therapy and recommended continued therapy to improve strength in range of motion. (*Id.*)

An MRI of Plaintiff's right shoulder taken in early March 2003 indicated some misalignment [subluxation] within the shoulder joint and a complete tear in the supraspinatus [commonly called the rotator cuff] tendon. Some degeneration of the joint was also seen. No significant problems in other tendons were seen. (Tr. at 97, 156.)

In late March of 2003, Plaintiff was examined at the request of Dr. Martin by Dr. Roland J. Brandt, D.O. The doctor recounted that Plaintiff reported no specific injury to her right shoulder but did complain of a progressive worsening of symptoms with work activities. (Tr. at 99.) Plaintiff recalled a course of physical therapy which she felt had brought about only minimal

6

improvement. She reported that pain medications have provided "moderate relief." (*Id.*) The doctor noted some atrophy in the rotator cuff area of the right shoulder. Although Plaintiff exhibited full passive range of motion, weakness with raising and rotating the arm were seen. Signs of nerve impingement were also seen. (*Id.*) The doctor noted the results of Plaintiffs recent MRI and diagnosed a torn rotator cuff in Plaintiff's right shoulder. (Tr. at 100.) The doctor felt that in light of Plaintiff's increasing pain and medical history, "she is a candidate for surgical intervention as the conservative measures seem to have failed at this point." (*Id.*) Plaintiff told a doctor that she would consider her options. (*Id.*) Notations made by Dr. Martin in early August 2003 indicate that Plaintiff should undertake no work with the right shoulder which involved rotation of the shoulder greater than 90° or repetitive work with the shoulder. (Tr. at 102.)

At the administrative hearing, Plaintiff testified that she might be able to undertake work which could be done alternately sitting or standing but that she had difficulty gripping small items, noting that she had undergone carpal tunnel release surgery 15 to 20 years previously. (Tr. at 188, 195.) Plaintiff recounted that, at home, she does some laundry with the assistance of her daughters. (Tr. at 190.) Plaintiff recounted that she feeds their horses but no longer rides them. (Tr. at 191.) Plaintiff stated that although she had at one time been treated for depression, she stopped treatment because she was "not as depressed as I was [.]" (Tr. at 194.)

At the administrative hearing, a Vocational Expert (VE) testified. She characterized Plaintiff's prior work as an assembler to be unskilled and heavy, and her other assembly work to be unskilled and between light and heavy exertion. (Tr. at 196.) In response to a hypothetical question presuming a person of Plaintiff's circumstances who could undertake light exertion work that did not require reaching above chest or shoulder level, did not require repetitive use of the hands nor fine dexterity, involved little, if any, writing, and could be accomplished either sitting or standing. The VE identified 1,400 security guard jobs, 2,000 greeter and 3,100 hostess jobs consistent with these hypothetical conditions. (Tr. at 198.)

7

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since February 20, 2003. (Tr. at 14 .) At step two, the ALJ did not make an express finding whether Plaintiff's "history of bilateral carpel tunnel surgery more than 15 years ago, torn right rotator cuff tear with persistent right shoulder pain, complaints of left shoulder pain, complaints of difficulty repetitively using the hands, and stable rheumatoid arthritis" were "severe" within the meaning of the second sequential step. (*Id.*) However, because the ALJ proceeded with the analysis, I presume he found these impairments to be "severe" for the purposes of the disability analysis. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could not perform her previous work as an auto assembler. (*Id.*) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 14-15.)

> Using the Commissioner's grid rules as a guide, the ALJ found that:
>
> Based on exertional capacity for light work and the claimant's age, education and work experience, section 404.1569 and Rule 202.10, Table No. 2, Appendix 2, Subpart P, Regulations 4, would direct a conclusion of 'not disabled.'
>
> Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above cited Rule as a framework for decision making, there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are : usher, security guard, greeter, and hostess.

(Tr. at 14.)

### F.     Analysis and Conclusions

### 1.     Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 14.)

8

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim.  I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

**2.   Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner.  In this circuit, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Mullen,* 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.   On this record, I suggest that substantial evidence supports the findings of the ALJ.  Although Plaintiff clearly evidences impairments as a result of a right shoulder rotator cuff tear, none of the physicians who examined the Plaintiff limited her activities in ways inconsistent with the Commissioner's definition of light exertion work.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that were appropriately consistent with the objective medical findings contained in the medical records available to the ALJ, and, in particular, findings and assessments of Drs. Martin and Brandt.  *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 481 (6th Cir. 1988); *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987);  *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

9

The ALJ failed to find Plaintiff's complaints of disabling painfully credible. Social Security regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c) (1995); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

In the present case, the ALJ acknowledged that Plaintiff had an impairment that could cause pain; however, he found that the severe and debilitating nature of Plaintiff's alleged pain was not fully credible and provided reasons for this conclusion. The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at **3 (6th Cir. Ohio

10

Feb. 11, 1999). Under these standards, I suggest that there is insufficient basis on this record to overturn the ALJ's credibility determination.

I further suggest that as to any claims of disabling mental impairments, the evidence in this case falls considerably short of that deemed sufficient in this circuit to justify a finding of disability. *See Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260 (6th Cir. 1988); *Lankford v. Sullivan*, 942 F.2d 301 (6th Cir. 1991); *see also Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1068 (6th Cir. 1992). In addition, it is the law of this circuit that a claimant must meet all criteria of a listing in order to be deemed disabled on the basis of the medical evidence alone. *Young v Sec'y of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

After review of the record, I conclude that the decision of ALJ Alfred H. Varga, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Mullen*, 800 F.2d at 545, as the decision is supported by substantial evidence.

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n. of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

            s/ *Charles E. Binder*
            CHARLES E. BINDER
Dated: December 28, 2006      United States Magistrate Judge


### **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Barry Keller, Ann Marie Pervan and James Brunson, and served on District Judge Ludington in the traditional manner.


Dated:  December 28, 2006    By  s/Jean L. Broucek
              Case Manager to Magistrate Judge Binder